**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE**

---------------------------------------------------------------------- X
**MIDWEST-CBK, LLC,**                               :
                                                    :
       **Plaintiff,**                          :
                                                    :
       *v.*                                    :    No. 17-cv-00154
                                                    :
**UNITED STATES,**                                  :
                                                    :
       **Defendant.**                         :
---------------------------------------------------------------------- X

## STATUS REPORT

Plaintiff Midwest-CBK, LLC ("Midwest") hereby informs this Court that it will not be able to provide further evidence relating to the issues to be addressed in Phase Two of this litigation. As a result plaintiff will move and request that the Court enter a final judgment be entered against Plaintiff in this litigation, dismissing the action in a form allowing plaintiff to appeal to the Federal Circuit Court of Appeals the issues in Phase 1 of this litigation decided by Slip Op. 22-51 on May 20, 2022.

While plaintiff maintains its corporate existence, it ceased actively doing business at the end of 2018 and either dismissed or reassigned the company's employees. The government had requested that plaintiff produce all evidence which would allow for determination of a dutiable value based on the "FOB Buffalo, New York" prices at which plaintiff sold the imported merchandise to its United States customers.[1] While this request is not *per se* unreasonable, it is impossible to comply with, based on the plaintiff's business model.

---

[1] This data would have allowed the parties to determine whether appraisement at "FOB Buffalo, New York" prices would have yielded plaintiff any recovery of the duties in dispute. It is highly unlikely that such a calculation would have revealed more duties owed the government. In any event, the government has not asserted a counterclaim in this action.

Each day (for many years), Midwest filed a Customs entry for a truckload of merchandise arriving at the port of Buffalo, New York. Each truck contained goods destined for as many as 200 different United States customers, all of which were aggregated on the Customs entry. To determine "FOB Buffalo, New York" prices for the goods in a single truck would entail analyzing each item in the 200 customer orders. As Plaintiff's customers were small retailers, each customer order tended to contain many different items, classifiable under many different tariff classifications and at different price levels (depending on volume discounts, etc.). Each entry might correspond to as many as 10,000 different FOB prices. With entries being made 6 days a week, for many years, determining FOB Buffalo prices would entail examining tens, or hundreds of millions, of individual sales. It would also entail calculating a deduction for non-dutiable expenses contained in the FOB prices, such as international freight costs and Customs duties. Even if the company were active, producing this information would be a herculean effort. Finally, as the company's sales records are not linked to particular Customs entries, the parties would need to associate sales to entries – if this is even possible.

Extraction of the requested data would take years of work, and hundreds of thousands of dollars in expense for the plaintiff to complete.

As the court will recall, plaintiff considers its "FOB Buffalo, New York" sales to be domestic sales, rather than sales for export, it entered the goods on the basis of deductive values, 19 U.S.C. §1401a(c). Plaintiff protested CBP's re-appraisement of these goods using an "uplift calculation" taken from the company's books and records. Were an appellate court to determine that these liquidated values were not proper "transaction values," plaintiff expects that it and the government could reach a mediated or other settlement of the valuation issue.[2] Attempting a

---

[2] Should the appellate court determine that CBP's extension of liquidations of the entries in this case was improper, the entries would be "deemed liquidated" as entered, and no further proceedings would be required.

precise calculation based on "FOB Buffalo, New York" prices, is, however, impossible as a practical matter. As such, in accordance with the spirit of Rule 1 of the United States Court of International Trade, the speediest, inexpensive and just way to reach a final determination in this action would be for a judgment of dismissal to be entered against plaintiff based on the Court's findings in Slip Op. 22-51.

Plaintiff emphasizes that this request is not consent to a stipulated judgment, but rather to a form of judgment of dismissal, as a way to further the case's other issues on appeal. As explained by the Supreme Court in *Thomsen v. Cayser,* 243 U.S. 66, 83 (1917) that when "plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they may come to this court without further delay."

As further explained by the Federal Circuit:

> The distinction between consenting to the substance of a judgment (i.e., agreeing as to what the substantive outcome of the judgment will be) and merely consenting to the judgment's form (including agreeing that the judgment will be final instead of interlocutory) is crucial to the issue of whether waiver of a party's right to appeal should be presumed. A party who consents to the substance of a judgment should indeed be presumed to have waived its right to appeal—absent an express reservation of that right on the record—because voluntarily agreeing to an adverse substantive outcome is an indication that the party has abandoned its underlying claims or defenses. In contrast, no waiver exists—even without a reservation of appellate rights—when a party consents solely to the form of a judgment, because merely agreeing to the form of a judgment does not in itself imply that the party agrees with the judgment's substantive outcome or intends to abandon its position on the issues.

*Taylor Brands, LLC v. GB II Corp.,* 627 F.3d 874, 878 (Fed. Cir. 2010). In this case, Plaintiff consents to the form of a judgement against it, allowing plaintiff to appeal the issues it had previously requested interlocutory appeal on, which this Court denied. S*ee* ECF 77. As such, plaintiff will not oppose a final judgment for the Government in this litigation, so that an appeal might be taken.

The parties are actively working together to draft a judgment for phase two. The parties expect that a formal motion and judgment will be made within 30 days.

                                                  Respectfully submitted,

                                                  NEVILLE PETERSON LLP

                                                  /s/ John M. Peterson
                                                  John M. Peterson
                                                  Patrick B. Klein
                                                  One Exchange Plaza
                                                  55 Broadway, Suite 2602
                                                  New York, NY 10006
                                                  (212) 635-2730
                                                  jpeterson@npwny.com

Dated:  September 8, 2023