UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

------------------------------------------------------------------ X

**MIDWEST-CBK, LLC,**

      **Plaintiff,**

      *v.*              No. 17-cv-00154

**UNITED STATES,**

      **Defendant.**

------------------------------------------------------------------ X

## PLAINTIFF'S MOTION FOR FINAL JUDGMENT OF DISMISSAL TO BE ENTERED

As previously reported to the Court, *see* ECF 86, Plaintiff Midwest-CBK, LLC ("Midwest") will not be able to provide further evidence relating to the issues to be addressed in Phase Two of this litigation. As a result plaintiff moves this Court for a final judgment be entered against Plaintiff in this litigation, dismissing the action in a form allowing plaintiff to appeal to the Federal Circuit Court of Appeals the issues in Phase 1 of this litigation decided by Slip Op. 22-51 on May 20, 2022.

While plaintiff maintains its corporate existence, it ceased actively doing business at the end of 2018 and either dismissed or reassigned the company's employees. The government had requested that plaintiff produce all evidence which would allow for determination of a dutiable value based on the "FOB Buffalo, New York" prices at which plaintiff sold the imported merchandise to its United States customers.[1] While this request is not *per se* unreasonable, it is impossible to comply with, based on the plaintiff's business model.

---

[1] This data would have allowed the parties to determine whether appraisement at "FOB Buffalo, New York" prices would have yielded plaintiff any recovery of the duties in dispute. It is highly unlikely that such a calculation would have revealed more duties owed the government. In any event, the government has not asserted a counterclaim in this action.

Each day (in 2013 and part of 2014), Midwest filed a Customs entry for a truckload of merchandise arriving at the port of Buffalo, New York. Each truck contained goods destined for as many as 200 different United States customers, all of which were aggregated on the Customs entry. To determine "FOB Buffalo, New York" prices for the goods in a single truck would entail analyzing each item in the 200 customer orders. As Plaintiff's customers were small retailers, each customer order tended to contain many different items, classifiable under many different tariff classifications and at different price levels (depending on volume discounts, etc.). Each entry might correspond to as many as 10,000 different FOB prices. With entries being made 6 days a week, for more than a year, determining FOB Buffalo prices would entail examining tens, or hundreds of millions, of individual sales. It would also entail calculating, if separately identifiable from the FOB prices, non-dutiable expenses such as international freight costs and Customs duties. Even if the company were active, producing this information would be a herculean effort. Finally, as the company's sales records are not linked to particular Customs entries, the parties would need to associate sales to entries – if this is even possible.

Extraction of the requested data would take years of work, and hundreds of thousands of dollars in expense for the plaintiff to complete.

As the court will recall, as plaintiff considers its "FOB Buffalo, New York" sales to be domestic sales, rather than sales for export, it entered the goods on the basis of deductive values, 19 U.S.C. §1401a(c). Plaintiff protested CBP's re-appraisement of these goods using an "uplift calculation" taken from the company's books and records to ascertain the transaction value. Ascertaining the transaction value based on "FOB Buffalo, New York" prices, is, however, nearly impossible as a practical matter. As such, in accordance with the spirit of Rule 1 of the United States Court of International Trade, the speediest, inexpensive and just way to reach a final

determination in this action would be for a judgment of dismissal to be entered against plaintiff based on the Court's findings in Slip Op. 22-51.

To reach a final judgment, plaintiff stipulates that, should the Court of Appeals for the Federal Circuit affirm this Court's final judgment, the case will be dismissed and that plaintiff will abandon all further claims for the return of the disputed duties that form the basis for this lawsuit. Plaintiff further stipulates that, should this matter be remanded to the trial court for any purpose, plaintiff will not present any further evidence as to the calculation of transaction value.

Plaintiff emphasizes that this motion is not to consent to a stipulated judgment, but rather to a form of judgment of dismissal, as a way to further the case's other issues on appeal. As explained by the Supreme Court in *Thomsen v. Cayser,* 243 U.S. 66, 83 (1917) that when "plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they may come to this court without further delay."

As further explained by the Federal Circuit:

> The distinction between consenting to the substance of a judgment (i.e., agreeing as to what the substantive outcome of the judgment will be) and merely consenting to the judgment's form (including agreeing that the judgment will be final instead of interlocutory) is crucial to the issue of whether waiver of a party's right to appeal should be presumed. A party who consents to the substance of a judgment should indeed be presumed to have waived its right to appeal—absent an express reservation of that right on the record—because voluntarily agreeing to an adverse substantive outcome is an indication that the party has abandoned its underlying claims or defenses. In contrast, no waiver exists—even without a reservation of appellate rights—when a party consents solely to the form of a judgment, because merely agreeing to the form of a judgment does not in itself imply that the party agrees with the judgment's substantive outcome or intends to abandon its position on the issues.

*Taylor Brands, LLC v. GB II Corp.,* 627 F.3d 874, 878 (Fed. Cir. 2010). In this case Plaintiff consents to the form of a judgement against it, allowing plaintiff to appeal the issues it had

previously requested interlocutory appeal on, which this Court denied. S*ee* ECF 77. As such, plaintiff moves a final judgment for the Government in this litigation, so that an appeal might be taken.

On October 6, 2023, counsel for plaintiff contacted counsel for the defendant, Monica Triana, Esq. of the Department of Justice, to ascertain the Government's position to this motion. Ms. Triana indicated that the Government consents to the relief requested.

                              Respectfully submitted,

                              NEVILLE PETERSON LLP

                              /s/ John M. Peterson
                              John M. Peterson
                              Patrick B. Klein
                              One Exchange Plaza
                              55 Broadway, Suite 2602
                              New York, NY 10006
                              (212) 635-2730
                              jpeterson@npwny.com

Dated:  October 10, 2023